UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICHARD McCRACKEN, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23CV908-PPS/JPK |
| KIRBY, et al., | |
| Defendants. | |

OPINION AND ORDER

Richard McCracken, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983.[1] (ECF 7.) As required by 28 U.S.C. § 1915A, I must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. McCracken is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[1] Mr. McCracken filed this case in the U.S. District Court for the Southern District of Indiana, which transferred the case to this District on October 13, 2023. (ECF 10-12.)

Mr. McCracken is an inmate at Wabash Valley Correctional Facility. His claims stem from events occurring at Miami Correctional Facility ("MCF") in 2022. He claims that on February 28, 2022, he was lying on his bed in the L-dormitory when "Officer John Doe" approached his cell door. Mr. McCracken had been involved in an altercation with another staff member a few days earlier, for which he had been charged with "assaulting staff" in violation of the disciplinary code. He claims Officer Doe had a "personal vendetta" against him because of the prior incident, and "falsely accused [Mr. McCracken] of throwing something on him." Mr. McCracken got out of bed "to protest," at which point Officer Doe allegedly sprayed him with an entire can of chemical spray without any warning.

Sergeant Hensley (first name unknown) was allegedly standing nearby and saw Officer Doe spraying the chemical spray but did nothing to intervene. Instead, after he was covered in chemical spray, she came over, smiled and said, "I bet you won't assault another officer in my unit again now, will you?" A second unidentified officer then arrived, and this officer and Sergeant Hensley escorted him to the shower so he could rinse off the chemical spray. On the way, Sergeant Hensley allegedly told him that if he "didn't say anything" about what happened, she would make sure he did not get written up for another disciplinary infraction. He responded, "Your officer sprayed me for no reason, so why wouldn't I say anything?" She allegedly told him, "Ok, you're not getting a shower," and then took him to the restrictive housing unit. She made him remove all his clothing except his underwear and put him in any empty cell. She stated,

"Since you're going to be a problem, you're going to stay in this cell without nothing [sic] until I decide to let you out."

For the next week, he stayed in the cell with no bedding, hygiene items, clothing, or other personal items. He claims he slept on an "ice cold metal bunk frame," which caused significant discomfort and aggravated a prior leg injury. Because he was never permitted to wash off the chemical spray, his skin burned, and he developed lesions. He was also not let out of his cell for meals and was "left starving." He claims he only received one meal tray on some days and no meal trays at all on other days. At the end of the week, an unnamed captain (a non-party) discovered him in the cell and directed that he be moved.

Sergeant Kirby (first name unknown) and a third unnamed officer escorted him to a new cell in the A-dormitory. Sometime later, Sergeant Kirby brought him his property. He claims his electronic tablet was broken and his hygiene products were missing. When he asked about his property Sergeant Kirby allegedly told him, "[T]hat's what happens when you assault staff." He told Sergeant Kirby that he would have no way to clean himself without his hygiene items and asked that he be provided with some. Sergeant Kirby allegedly told him he would have to "figure it out" and walked away.

He remained in the A-dormitory for another month, but because his tablet was broken he could not order any hygiene items from the commissary. He claims he was "in a state of filth" for weeks until another inmate gave him some hygiene items. At the end of the month, he was transferred to another area of the prison.

Based on these events, Mr. McCracken seeks monetary damages against MCF Warden William Hyatte, Sergeant Kirby, Sergeant Hensley, and unnamed officers. Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Additionally, state actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Giving Mr. McCracken the inferences to which he is entitled at this stage, he has alleged a plausible excessive force claim. He claims that Officer John Doe approached his cell because of a "personal vendetta" and sprayed him with pepper spray even though he was inside his cell and not posing a threat. He further alleges that Sergeant Hensley was standing nearby and saw what was happening but did nothing to stop it. It can be inferred from his allegations that she knew excessive force was being used and condoned it, because she later smiled at him and made a comment about him not assaulting staff in her unit in the future. He further alleges that Sergeant Hensley refused to let him have a shower to rinse off the chemical spray in an effort to cause him

4

further pain, which resulted in lesions developing on his skin. He has alleged enough to proceed against these Defendants under the Eighth Amendment.

As to Officer John Doe, it is permissible to sue a "placeholder defendant" in federal court, but as a practical matter an unnamed defendant cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). This defendant must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.* Because of the approaching deadline (which expires in February 2024) Sergeant Hensley will be ordered to provide identifying information about this officer as outlined below.[2]

The Eighth Amendment also prohibits inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation is sufficiently serious that the action or inaction of a prison employee leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). The Eighth Amendment entitles inmates to adequate food, clothing, shelter, bedding, and hygiene materials. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. "[C]onduct is deliberately indifferent when the

---

[2] I have an obligation to assist Mr. McCracken in identifying and serving this defendant. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).

official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Mr. McCracken alleges that Sergeant Hensley placed him in an empty cell without bedding, clothing, or hygiene items, and instructed that he remain in his cell for meals. He was brought only a few meal trays during a week-long period and was "left starving." He further claims that Sergeant Kirby knew he was without any hygiene items or means to order them while he was in the A-dormitory, but brushed off his concerns and in effect told him that's what he got for assaulting a prison employee. He claims he was in a "state of filth" for weeks due to the lack of hygiene items, which caused him further skin problems. He has alleged enough to proceed further against these Defendants for denying him the minimal civilized measure of life's necessities.[3]

---

[3] He mentions a second and third unnamed officer in connection with these events, but from what he has alleged, those officers' involvement appears limited to escorting him to his cell. It can be discerned that it was Sergeant Hensley who made the decision to deny him a shower and leave him in the cell with no clothing, bedding, or food for a week, and Sergeant Kirby who brushed off his concerns about the lack of hygiene items. Without more, he has not alleged a plausible deliberate indifference claim against these other unnamed officers. If he intends to pursue claims against them, he is reminded that they must be identified and named in an amended complaint within the two-year limitations period, which expires in February 2024. *Rodriguez*, 49 F.4th at 1121.

As for Warden Hyatte, there is insufficient factual content from which I can plausibly infer that he was personally involved in these events, and he cannot be held liable for damages solely because of his position. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Supervisory officials can be held liable for a constitutional violation only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). There is no indication from Mr. McCracken's allegations that Warden Hyatte did that here. He claims that he filed "a surplus of grievances" about the use of excessive force, the conditions under which he was housed, and the loss of his personal property, but never heard back about any of them. It is not clear from his allegations that the grievances were directed to the Warden, and in any event, the mishandling of grievances does not by itself give rise to a cognizable constitutional claim. *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). He has not stated a claim against the Warden in his personal capacity.

Although unclear, he may be trying to sue the Warden in his official capacity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Such a claim is unavailing, because *Monell* only applies to municipal actors, not state officials. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *see also Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state."). A state prison official can be named in an official capacity for prospective injunctive relief, but only if there is an ongoing constitutional violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). The amended complaint reflects that Mr. McCracken is no longer in the custody of the Warden of MCF, and he does not allege an ongoing constitutional

7

violation; instead, he seeks damages for discrete events that occurred in 2022. Warden Hyatte will be dismissed as a defendant.

ACCORDINGLY, the court:

(1) DIRECTS the clerk to add Officer John Doe as a defendant;

(2) GRANTS the plaintiff leave to proceed against Officer John Doe in his personal capacity for monetary damages for using excessive force against him in violation of the Eighth Amendment on or about February 28, 2022;

(3) GRANTS the plaintiff leave to proceed against Sergeant Hensley (first name unknown) in her personal capacity for monetary damages under the Eighth Amendment for failing to intervene in the use of excessive force by Officer John Doe;

(4) GRANTS the plaintiff leave to proceed against Sergeant Hensley and Sergeant Kirby (first names unknown) in their personal capacity for monetary damages for denying him the minimal civilized measure of life's necessities in violation of the Eighth Amendment;

(5) DISMISSES William Hyatte as a defendant;

(6) DISMISSES all other claims;

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Kirby and Sergeant Hensley (first names unknown) at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 7) pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(9) ORDERS Sergeant Kirby and Sergeant Hensley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(10) ORDERS Sergeant Hensley to provide on or before **December 20, 2023**, the name of Officer John Doe, who was working in the L-dormitory on the 1/2 side on or about February 28, 2022, and allegedly sprayed the plaintiff with chemical spray in her presence, or to file a notice by that date explaining why the name of this officer cannot be provided.

SO ORDERED on October 17, 2023.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT